[Civ. No. 16335. Second Dist., Div. One. Nov. 19, 1948.]

ARTHUR MORLEY et al., Appellants, v. A. B. MALOUF et al., Respondents.

Joseph Scott, A. H. Rissi and George Acret for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

WHITE, J.—In an action for damages for the conversion of corporate stock, defendants had judgment and plaintiffs appeal.

In March, 1938, Arthur Morley executed as trustee an instrument denominated a "trust indenture," acknowledging the receipt in trust of deeds to certain real property, and naming Oliver O. Clark "and such other persons" as Oliver O. Clark might "from time to time designate" as beneficiaries, and further providing that "The active manager of this Trust shall be B. W. Marks, and he shall have authority to perform such acts, in the name of this Trust, as may be approved by me as trustee, and by you as Beneficiary. . . ." This document, which purported to create what is hereinafter designated the "Morley Trust," is reproduced below.*

---

*"Los Angeles, California
"March 31st, 1938

"Oliver O. Clark
"1203 Garfield Bldg.
"Los Angeles, California

"Dear Sir:

"I hereby acknowledge that I have received, and have this day caused to be recorded in the Office of the County Recorder of Los Angeles County, State of California, with your approval, deeds, which convey to me certain real property situated in the Cities of Los Angeles and Burbank, in Los Angeles County, California, being a portion of the Tract commonly known as Benmar Hills, in Trust as follows:

"I acknowledge that I have received and hold said deeds, and am to hold and dispose of said properties, under the following Trust conditions:

"The beneficiaries of this Trust are yourself, upon the terms, covenants and conditions herein named, and such other persons as you may from time to time designate, as herein specified.

"The properties of this Trust shall consist of the properties covered by said deeds, and such other properties as may be conveyed hereafter to me, or to my nominee, for the purposes hereof.

"The active manager of this Trust shall be B. W. Marks, and he shall have authority to perform such acts, in the name of this Trust, as may be approved by me as trustee, and by you as beneficiary of this Trust.

"All expenses and obligations as may be incurred in this Trust shall be paid as preferred claims in this Trust.

"My compensation as trustee hereunder shall be such as you may state, from time to time, and shall be paid only from the net monies realized from the sale of said properties, remaining after all expenses and obligations of Trust have been paid.

"The compensation of B. W. Marks as manager of this Trust shall be contingent upon his devoting such portion of his personal time and effort as may be reasonably required in the development, lease, and sale of the properties of this Trust, under such plans therefor as you may personally approve, and until said Trust Estate has been fully liquidated. The amount of such compensation shall be determined by you, in your uncontrolled discretion, and in any event, shall be payable only as and when his said services have been fully completed, and the properties of this Trust have been fully leased, upon long term leases, sold, or otherwise disposed of. His compensation shall be payable only from the net

682

On July 20, 1939, Morley Trust, Ben W. Marks as "manager" thereof, and the defendants W. B. Malouf, B. B. Malouf and A. B. Malouf embarked upon a project of acquiring real property in Los Angeles County known as the "Benmar Hills Tract," their agreement being evidenced by a document whereby Morley Trust and Marks undertook to deliver into several escrows unencumbered title to property described in the agreement and the three Maloufs undertook to deposit funds in such escrows, presumably as purchase-money or for the purpose of clearing title to the various lots and parcels involved. Pursuant to the terms of this agreement, a partnership known as Malouf Realty Company was formed by the three Maloufs and a corporation was organized called "Benmar Hills Corporation," the capital stock of which was issued as follows: 5,000 to Arthur Morley, the trustee, and 5,000 shares equally among the three Maloufs.

monies received from such dispositions of said properties, and as and when so received. Provided, however, that this Trust may advance expense money for B. W. Marks, or may loan money to B. W. Marks, from time to time, and in such amounts and upon such terms, as you may approve, for the purpose of assisting Mr. Marks to continue his efforts on behalf of this Trust.

"Your beneficiary interest in and under this Trust is contingent upon your continuing to render your personal and professional services as may be reasonably required in furtherance of the purposes of this Trust, until the properties of this Trust have been fully liquidated by sale, long term leases, or otherwise, and the obligations of this Trust have been fully paid. The amount of your compensation from this Trust shall be reasonably representative of the time and effort you have heretofore expended, and may hereafter expend, in relation to said properties and to this Trust, consistent with the net amount of money which may be received hereafter from the properties of this Trust.

"The net monies remaining from the liquidation of this Trust, as herein provided, after the payment of all of its expenses and obligations; the compensation of myself as trustee; the compensation, if any, of Mr. Marks, and the compensation of yourself for services rendered, and to be rendered by you, as herein provided, are to be paid in the proportion, and to the persons you may name, who, by reason of contributions in money or services to the furtherance of this project, are justly entitled to remuneration from the final net receipts of this Trust, and upon such designation by you, in your uncontrolled discretion, such persons shall constitute beneficiaries under this Trust, and shall be entitled to share in said proportions in the final distribution of such net receipts.

"This trust shall be known as 'Morley Trust' and shall continue until the purposes hereof, as herein set forth, have been fully accomplished.

"This Trust is expressly limited to the real properties which are now, or may hereafter become, of the subject matter of this Trust, and to any monies or securities which may be obtained therefor, and to transactions had in respect thereof in furtherance of the purposes of this Trust, which purposes shall include a plan for the founding of a University.

"Yours truly,

"Arthur Morley"

The agreement of July 20, 1939, provided that B. W. Marks and Morley Trust were to furnish services in acquiring property in the Benmar Hills Tract and the Maloufs were to furnish the capital for that purpose, not to exceed $150,000; that the Maloufs were to receive one-half of the stock of the corporation; that the corporation would execute a note to the Maloufs for the amount of their advances plus a 50 per cent profit thereon, such note to be secured by a first trust deed on the property of the corporation. The corporation was also to execute a note for $500,000 to Marks and the Morley Trust secured by a second trust deed and payable only after the note to the Maloufs had been fully paid. About November, 1939, Marks advised the Maloufs that procurement of the properties in the manner proposed was impossible and impracticable. In August, 1940, the Maloufs having advanced over $300,000 in acquiring properties, it was agreed that Morley Trust would execute to the Malouf partnership a note for $225,000 secured by a pledge of the 5,000 shares of stock of Benmar Hills Corporation theretofore issued to Arthur Morley; that the three Maloufs would also execute a note for $225,000 to the partnership, secured by a pledge of the 5,000 shares which had been issued to them. The total of these two notes, or $450,000, represented $300,000 which the Maloufs agreed would be considered the amount of their advances (although they had advanced considerably more than this sum), to which was added the 50 per cent profit which the Maloufs were to receive on their advances under the original 1939 agreement. The note of the Morley Trust was guaranteed by B. W. Marks. The notes, pledge agreements and stock certificates were duly executed and delivered. No part of the $225,000 note executed by Morley Trust to Malouf Realty Company was ever paid, except the sum of $5,000. Thereafter the Malouf Realty Company advanced additional sums to Benmar Hills Corporation, represented by promissory notes of the corporation executed by B. W. Marks as president, dated from October, 1940, to November, 1941, totaling some $230,000.

On November 12, 1941, defendant A. B. Malouf individually loaned to B. W. Marks and Morley Trust the sum of $5,000, receiving a promissory note executed by Marks individually and as manager on behalf of Morley Trust, due March 12, 1942, and accompanied by a document entitled "Assignment and Pledge Agreement," whereby Marks and Morley Trust transferred to A. B. Malouf as security all their

interest in the Benmar Hills properties and in Benmar Hills Corporation, Benmar Hills Apartments, Incorporated, and Valley Construction Company. The stock certificates of Benmar Hills Corporation, having been theretofore pledged to Malouf Realty Company to secure the $225,000 note, were not delivered to the pledgee.

On March 19, 1942, the $5,000 note being unpaid, Marks wrote a letter to Mr. A. B. Malouf, as follows:

"I am extremely sorry that as manager of the Morley Trust, I must now admit that it is impossible for the Morley Trust to repay you the loan made to it on November 12, 1941. I recognize that the Morley Trust could perhaps force you to proceed to suit and obtain a judgment against it, or on the other hand, foreclose the security of the stock that this Trust has in Benmar Hills Corporation as a pledge. In view, however, of the absolutely impossible situation in which the Morley Trust now finds itself, it is not the desire nor the intention of the Morley Trust to put you to that cost and expense. You may, therefore, consider this as an assignment to you of any interest which the Morley Trust may have or assert, contingent or otherwise, in and to all lots or parcels of land within or adjoining the Benmar Hills Tract at Burbank, California, or elsewhere, or to any of the capital stock of the Benmar Hills Corporation, subject, of course, to the outstanding indebtedness for which said stock or other interest may be pledged to the Malouf Realty Company.

"This loan was made under the specific understanding and agreement, that if for any reason the said loan could not be repaid on its due date, the undersigned would release all claim to any interests, real or asserted, in any of the properties within or adjoining the Benmar Hills Tract at Burbank, California, whether title of said properties were in the name of any corporation or in your name or that of your brothers, W. B. Malouf or B. B. Malouf, and that in such event the undersigned would waive all interest in the stock of any corporation holding title to any portion of said properties, and by this document, the undersigned does hereby waive all interest in the above mentioned properties without further consideration to the undersigned.

"The entry of the United States into the World War in December, 1941, has so affected all plans heretofore pending through which we had hoped that the expenditure of certain money might bring about the accomplishment of a new deal which would be of benefit to the Morley Trust that it seems,

at this time, useless to struggle further with said plans, and therefore the undersigned has been compelled to surrender its last hope of securing any returns from any contingent interest it had hoped to develop in the above mentioned properties. It is hereby acknowledged that the Morley Trust has no financial or property interests of any kind whatsoever outside of the contingent interests hereby assigned to you.

> "Yours Very truly,
> MORLEY TRUST
>> By B. W. MARKS
>> Manager."

Also under date of March 19, 1942, Ben W. Marks wrote a letter to Benmar Hills Corporation, stating that "I have today forfeited any contingent right which I might have in the stock of Benmar Hills Corporation to Mr. A. B. Malouf. Consequently, I feel that since I no longer have even a contingent interest in the property held by Benmar Hills Corporation that no good purpose is served by my remaining as a director and officer of Benmar Hills Corporation. Consequently, you may consider this my resignation as a director and president of Benmar Hills Corporation effective on even date herewith. . . ."

On August 24, 1945, something more than three years after the execution and delivery of the documents hereinabove quoted by which Marks surrendered all interest in the project, Oliver O. Clark, as attorney for Marks, tendered to A. B. Malouf the sum of $6,136, and in a letter accompanying the tender demanded on behalf of Marks the return of the "assignment and pledge agreement." The tender being refused, the present action followed.

The complaint, entitled "complaint for conversion and for damages," set forth the creation of the Morley Trust, and the assignment by Arthur Morley on September 10, 1945, of all interest of the Morley Trust to plaintiff R. B. Seeley, the making of the agreement with the Maloufs on July 20, 1939, and the organization of the Benmar Hills Corporation. It was further alleged that the agreement of July 20, 1939, was still in effect; that certain properties had been conveyed to the corporation; that other properties were held by the Maloufs for the use and benefit of the corporation; that on November 12, 1941, Arthur Morley as trustee pledged the capital stock which stood in his name to A. B. Malouf to secure payment of $5,000 on or about March 12, 1942; that the

pledge had never been foreclosed and no demand for payment of the $5,000 had ever been made; that Morley offered to pay the obligation shortly after it matured, but at the request of A. B. Malouf payment was postponed indefinitely; that on August 24, 1945, Morley tendered payment in full of the $5,000 obligation, which tender was refused. It was further alleged that the three Maloufs had at all times full control of the books and records of Benmar Hills Corporation; that the defendants conspired to deprive Morley as trustee of the rights and benefits to which he was entitled under the agreements hereinbefore alleged and in pursuance of such conspiracy have refused to render an accounting, and have knowingly and maliciously appropriated to their own use large sums of money belonging to Benmar Hills Corporation and caused the corporation to convey large portions of the real property held by it to the defendants; that under the agreements plaintiffs are entitled to money in the sum of over $200,000 and that ''the reasonable value of the interests and estates of these plaintiffs, under said contracts, in and to said real properties, by virtue of the ownership by said Arthur Morley as such trustee, of one half of the . . . stock of said corporate defendant, and otherwise, as herein alleged, and which said defendants . . . have misappropriated . . . exceeds two million dollars.'' It was further alleged that the individual defendants had falsified records of the corporation and prepared false documents, and sold property of the corporation at less than its reasonable value, to plaintiffs' damage in the sum of $1,000,000. The complaint concluded with a prayer for damages, actual and punitive, but did not ask for return of the pledged stock or the ''assignment and pledge agreement.''

In addition to the denials in their answer, the defendants pleaded the document of March 19, 1942, by which Morley Trust through Marks assigned and conveyed all its interest in the corporation and the real property, and also set forth the prior pledge transaction by which the stock held by Morley Trust had been pledged to secure a note for $225,000, to Malouf Realty Company, upon which obligation there remained an unpaid balance of $220,000. The defendants also pleaded the bar of the statute of limitations (Code Civ. Proc., § 337, subd. 1; § 338, subds. 3 and 4; § 339, subd. 1; § 343). The defendants A. B., W. B. and B. B. Malouf, filed a cross-complaint to quiet title to the 5,000 shares of stock involved.

The trial court found generally against the plaintiffs, finding that they had no right, title or interest in the stock or the

real property; that the agreement of July 20, 1939, was terminated at least as early as March 19, 1942; that at no time since said date, the date of the assignment and conveyance by Marks of all his interest and the trust interest in the corporation and properties, had Morley as trustee or otherwise, or his assignee, R. B. Seeley, any interest in the 5,000 shares of pledged stock; that the note for $225,000 had never been paid, except the sum of $5,000.

The court further found, with reference to the $5,000 pledge, that on November 12, 1941, Arthur Morley, as Trustee, the Morley Trust, and B. W. Marks, individually and as manager of the Morley Trust, borrowed from A. B. Malouf, $5,000, and thereupon executed their promissory note, due 120 days from date, and contemporaneously executed the assignment and pledge agreement of all interest of Marks and the trust in the stock of Benmar Hills Corporation, subject to the previous pledge on the note of $225,000. The court further found that although the second pledge was never foreclosed, such foreclosure was unnecessary by reason of the execution of the assignment and conveyance of March 19, 1942, hereinbefore quoted. It was further found that payment of the obligation represented by the $5,000 note was not postponed, either at the request of A. B. Malouf, or anyone else.

The trial court further specifically found:

"The court finds that on March 19, 1942, B. W. Marks had and possessed, as Manager of Morley Trust, actual power and authority to execute and deliver, as heretofore found, to A. B. Malouf the instrument" (the surrender of all interest by Marks individually and on behalf of the trust) "and to bind thereby the Morley Trust and all persons having an interest therein.

"The court finds that plaintiff Arthur Morley, as Trustee of Morley Trust, and all persons interested in said Morley Trust, intentionally and by want of ordinary care, caused and allowed defendants herein and each and all of them to . . . and did . . . believe . . . that B. W. Marks, as manager of Morley Trust, had actual authority to execute and deliver" (the instrument under discussion) "and in reliance upon said belief, defendant A. B. Malouf refrained from foreclosing the pledge" (created by the instrument of November 12th, 1941).

The court further found that in reliance upon such belief Malouf Realty Company refrained from foreclosing its pledge under the $225,000 note, and that the Benmar Hills Corporation, also in reliance upon such belief, reissued to various

persons, including some not parties to the present action, the stock which had been pledged. It was further found:

". . . that plaintiff Arthur Morley, as Trustee of Morley Trust, and all persons having an interest in said Morley Trust, well and truly knew, continuously from and after March 19, 1942, that B. W. Marks, as manager of said Morley Trust, had executed and delivered to A. B. Malouf, as hereinabove found, the instrument (of March 19, 1942) . . ., but nevertheless did not, prior to the tender on August 24, 1945, of money to A. B. Malouf, as hereinabove found, notify or advise defendants, or any of them, of any claim or contention that B. W. Marks was without authority to execute or deliver said instrument as an effective and binding instrument of Morley Trust."

The court further found that by the matters and things above found, the plaintiffs were estopped from asserting that Marks did not have authority to execute the instrument of March 19, 1942.

Appellants contend that the trial court erred in admitting in evidence the instrument of assignment and conveyance executed by Marks on March 19, 1942, individually and in behalf of Morley Trust, in the absence of proof of Marks' authority to execute such instrument, and urge that the findings and conclusions of the trial court must fall because they are based solely upon the assumed validity of such instrument. In this respect appellants point to the language of the so-called "trust indenture" limiting the authority of Marks to acts approved by both the trustee, Morley, and the beneficiary, O. O. Clark, and assert that there is no evidence in the record that either of them ever consented to or approved the execution of the instrument or had any knowledge of its existence. It is urged that there could be no ostensible authority in the "manager" of a trust estate, simply because he had authority to pledge property, to consent to what amounted to a forfeiture of all the property pledged; that the trustee himself, under the trust instrument, could not bind the trust by such an agreement nor by the alleged agreement that if the $5,000 note was not paid when due the trust would release all its interest in the corporate or real property; that respondents, dealing with a trustee or agent of a trustee, were bound at their peril to ascertain the extent of his authority; and that there could be no ostensible agency or authority in the absence of words, acts or conduct of the principal which would give to the persons dealing with the agent

reason to suppose that he had authority he assumed to exercise.

As to the abstract statements of law upon which appellants rely there can be no dispute, but on the question of the application of those principles to the facts presented in the case at bar we find ourselves in agreement with the conclusions of the trial court. All of the appellants' assignments of error are based upon the ground that the document of March 19, 1942, was void and should not have been admitted in evidence, and their appeal must therefore fail if there be any substantial evidence to support the conclusion of the trial court that Marks had authority, actual or ostensible, to bind the trust; or if there be any substantial evidence to support the further conclusion that the trustee and beneficiary or beneficiaries of the Morley Trust were estopped to deny the existence of such authority; or, further, if there be any substantial evidence that the trustee and beneficiaries had knowledge of the acts of the Maloufs in causing the reissue of the stock to persons interested in the Malouf partnership more than three years prior to the commencement of this action.

Examination of the record discloses evidence, together with reasonable inferences which might be drawn therefrom, to provide ample support for the findings and conclusions of the trial court. On the question of the sufficiency of the evidence, we cannot do better than to quote from the opinion of the learned trial judge:

''My consideration of the facts begins with attention to the declaration of trust . . . . It is a somewhat vague and mysterious document. The reason for its existence does not appear on its face. It states that the trust 'shall continue until the purposes hereof, as herein set forth, have been fully accomplished.' But those purposes are not therein set forth, and the document invites some doubt as to its validity under the law against restraints on alienation. . . .

''Into the declaration itself is written the fact that B. W. Marks is the 'active manager'. The trustee is given no choice to select a manager. Marks was not a party to the declaration, and his 'employment' bears none of the indicia of a normal employment.

''From this document and from what followed, one is justified in inferring that the Benmar Hills project (apparently named after Ben Marks) was the project of Ben Marks; that he was the, or one of the, originators and promoters; that the

Morley Trust was a device to give security to persons who had or might contribute time, services. or money to the project, and possibly a device to serve other purposes; that Arthur Morley provided only a name and an identity, having no final managerial authority; and that insofar as the name 'Morley Trust' has been used as the name of a going business, it has been little more than the alter ego of Ben Marks and possibly one or a few intimate associates, not truly employers. These inferences may or may not be in accord with the truth. In either event I feel that they are justified in the total absence of evidence to the contrary—evidence which, if existent, could have been produced."

In this connection it should here be noted that Oliver O. Clark, the "beneficiary" under the original trust declaration, and who also acted as "attorney" for Morley Trust in transmitting the tender of payment of the $5,000 note, was present in court throughout the trial of the cause, but was not called to the stand to state whether he knew or approved of the activities of Marks which culminated in the "forfeiture" of all interest of the Morley Trust in the project; nor was Morley himself produced as a witness. The plaintiffs chose to rely upon the assumed weakness of the defense—that the defense might fail to make a sufficient showing as to the authority of Marks. They cannot now complain if the trier of facts draws the inference that evidence available to them but not presented would have been unfavorable.

The silence of the defendants upon the subject of knowledge or ratification of the acts of Marks assumes additional significance upon a review of the entire series of transactions. From the inception of the project, B. W. Marks represented the Morley Trust. On behalf of the "trust" he executed documents of far-reaching importance, without objection by the "trustee" or "beneficiary." It was not until more than four years after the execution by Marks of the instrument of March 19, 1942, that the plaintiffs sought to recover the value of whatever Marks may have surrendered by that document. As pointed out by the trial judge, Marks by the instrument in question did not actually forfeit anything of value, but merely surrendered a possible contingent interest in corporate stock already subject to a pledge to secure a debt of $220,000.

We are convinced from an examination of the record that the trial court was amply justified in concluding that "Morley Trust" was but the *alter ego* of Ben Marks; that this fact was known to all parties, and that therefore his authority to

execute the "forfeiture" instrument of March 19, 1942, cannot in this court be questioned. But moreover, we believe the trial court correctly decided that the action was barred by the three-year statute of limitations (Code Civ. Proc., § 338, subd. 3). This action was for an alleged "conversion" of personal property, the applicable limitation being three years. As observed by the trial court, if the defendants did not have title to the 5,000 shares of stock by virtue of the surrender of interest executed by Marks, they committed a clear act of conversion when, on June 17, 1943, asserting complete dominion and ownership of the stock, they caused the certificates to be cancelled and new certificates issued to new owners. This, the court found, they did in reliance upon the validity of the instrument executed by Marks. For more than three years thereafter, "beneficiary" Clark and "trustee" Morley did nothing, so far as the record discloses.

 So far as knowledge of Marks' acts and the acts of the defendants in reissuing the stock is concerned, the law requires an agent to "use ordinary diligence to keep his principal informed of his acts in the course of the agency" (Civ. Code, § 2020), and the trial court properly indulged in the presumption that Marks, if he had a principal, used ordinary diligence in informing such principal of the execution of the surrender agreement (Code Civ. Proc., § 1963, subds. 1, 4, 19, 20, 28). Whether Morley was a disinterested "dummy" or not, it is difficult to believe that Attorney Clark allowed three years to elapse without inquiry as to the status of the "Morley Trust."

The record discloses ample evidence to support the findings of the trial court, no error appears in the record, and, therefore, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 6, 1948, and appellants' petition for a hearing by the Supreme Court was denied January 17, 1949.